```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF VIRGINIA
                          Norfolk Division
```

**ALLISON MARIE JORDAN,**

      **Appellant,**

    v.                                      **ACTION NO. 2:06cv380**

**TOM C. SMITH, JR., TRUSTEE,**

      **Appellee.**

## OPINION

This matter comes before the court on the appeal of Allison Marie Jordan ("Jordan"), pursuant to 28 U.S.C. § 158(a), from a Memorandum Opinion and Order of the United States Bankruptcy Court for the Eastern District of Virginia.  On June 12, 2006, the bankruptcy court revoked appellant's discharge of indebtedness pursuant to 11 U.S.C. § 727(d)(3).  For the reasons stated below, the bankruptcy court's Memorandum Opinion and Order of June 12, 2006, is **AFFIRMED**.

### I. Factual and Procedural History

Jordan filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on January 7, 2005.  The bankruptcy court then appointed Tom C. Smith, Jr. as trustee of the bankruptcy estate.  On January 13, 2005, the bankruptcy court entered and sent Jordan an Administrative Order, which commanded Jordan to fulfill certain duties as a Chapter 7 debtor.  As relevant to this case, the order specifically stated that the debtor must (1) "safely care

for, protect and preserve all of [the debtor's] property"; (2) "not sell, transfer, remove, destroy, mutilate or conceal any of [the debtor's] property"; (3) "make all or any part [of the debtor's property] available to the trustee, when requested to do so"; and (4) "cooperate with the Trustee as is necessary to enable the Trustee to perform the Trustee's duties as required by law." This order also explained that the debtor must obey all orders of the bankruptcy court and that the debtor's "responsibility for doing so does not cease <u>even after a discharge is granted</u>." Order to Debtor, <u>In re Jordan</u> (Bankr. E.D. Va. Jan. 13, 2005) (No. 05-70093-DHA) (emphasis added).

On February 17, 2005, the meeting of creditors was held pursuant to 11 U.S.C. § 341. As part of this proceeding, the debtor listed real estate, located at 3376 Kings Neck Drive, Virginia Beach, Virginia, on her bankruptcy schedule. After analyzing various market analyses, which projected the fair market value of the property, the trustee did not immediately attempt to sell the property. These analyses, which included the cost of employing a real estate agent, indicated that the net proceeds from a sale would not likely exceed exemptions available to the debtor.

On the trustee's motion, the court entered an order on May 25, 2005, which extended the time for granting a discharge until June 17, 2005. According to the motion, this extension provided the trustee with additional time to investigate the debtor's

financial condition. On June 24, 2005, the trustee requested that the Clerk send out a notice to all creditors that there may be assets available for distribution in the case. At this time, the bankruptcy court also granted a discharge of indebtedness to Jordan. The case, however, remained open.

On or about July 1, 2005, one week after receiving the discharge, Jordan refinanced the debt on her real estate through Franklin Credit Management Company without securing a court order, obtaining the trustee's permission, or providing notice to the trustee. This refinancing created a new deed of trust and increased the debt on the property from $197,400 to $231,000. Because of this refinancing, Jordan received $15,000 of the equity, which she has since spent.

In November 2005, the trustee received an offer to purchase Jordan's property for $227,000 without the cost of employing a real estate agent. As a result, on November 28, 2005, the trustee filed a Motion and Application to Sell the Debtor's Property, which would have produced approximately $5,000 for distribution to unsecured creditors after taking into consideration the debtor's homestead exemption and payment of the first and second mortgages, a judgment lien, and trustee's commission. However, on December 12, 2005, the debtor responded to the motion and, for the first time, informed the court and trustee that she had refinanced the debt on her real property. Since the debtor had increased the balance owed on the

mortgage by refinancing, the trustee could not sell the property for $227,000 and generate funds for the unsecured creditors. Accordingly, the trustee withdrew the application to sell the property on February 14, 2006.

On February 28, 2006, the trustee filed a complaint to revoke the debtor's discharge. The complaint alleged that Jordan had refused to obey the court's Administrative Order of January 13, 2005, which order expressly forbade the debtor from transferring any interest in her property, even after discharge. The complaint also alleged that Jordan had failed to cooperate with the trustee and had prevented the trustee from performing his duties. On March 14, 2006, the debtor filed her response and argued that she had not refused to obey the bankruptcy court's order. Specifically, the debtor argued that the order did not require her to obtain permission from the court or trustee to refinance her property or prohibit her from refinancing the property after receiving a discharge.

The bankruptcy court found that Jordan had refused to obey the court's Administrative Order of January 13, 2005, and it revoked Jordan's discharge on that basis. A Memorandum Opinion and Order revoking Jordan's discharge was filed on June 12, 2006. Jordan noted her appeal on June 15, 2006.

**II. Analysis**

Jordan raises one central issue on appeal: whether the bankruptcy court erred as a matter of law in revoking Jordan's discharge, pursuant to 11 U.S.C. § 727(d)(3), for refusing to obey a lawful order of the court. On appeal, a district court reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo. See, e.g., Deutchman v. Internal Revenue (In re Deutchman), 192 F.3d 457, 459 (4th Cir. 1999).

The appellant claims that the bankruptcy court erred when it concluded that she "refused" to obey the Administrative Order and revoked her discharge under § 727(d)(3). Section 727(d)(3) provides that "[o]n request of the trustee, . . . and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if . . . (3) the debtor committed an act specified in subsection (a)(6) of this section." Section 727(a)(6)(A), read in conjunction with § 727(d)(3), specifically allows the revocation of a debtor's discharge if "[t]he debtor has refused . . . to obey any lawful order of the court." The purpose of § 727(d)(3) is to "'make it possible for the debtor to obtain a discharge early in the case but, to protect the estate and creditors, makes it revocable if the debtor later refuses to obey an order.'" Katz v. Araujo (In re Araujo), 292 B.R. 19, 22 (Bankr. D. Conn. 2003) (quoting 6 COLLIER ON BANKRUPTCY ¶ 727.16[5] at 727-75 (Alan N. Resnick & Henry J. Somer eds., 15th ed. rev. 2000)

(footnotes omitted)).

In drafting § 727(a)(6)(A), Congress provided that a debtor's bankruptcy discharge could only be revoked when the debtor has "refused" to obey a lawful order of the court. See 11 U.S.C. § 727(a)(6)(A). Since the enactment of this section, courts have diverged on whether the statutory term "refused" requires an element of willfulness or intent. See Araujo, 292 B.R. at 23; In re Gentry, 275 B.R. 747, 754 (Bankr. W.D. Va. 2001) (discussing the divergence of opinion without adopting a particular approach). From the cases of record, a majority of courts hold that the use of the word "refused" in § 727(a)(6)(A) requires a willful or intentional act, as opposed to merely a mistake or inability to comply. See Friendly Fin. Discount Corp. v. Jones (In re Jones), 490 F.2d 452, 456 (5th Cir. 1974); Missouri ex rel. Nixon v. Foster (In re Foster), 335 B.R. 709, 716 (Bankr. W.D. Mo. 2006); Gillman v. Green (In re Green), 335 B.R. 181, 183-84 (Bankr. D. Utah 2005); LaBarge v. Ireland (In re Ireland), 325 B.R. 836, 838 (Bankr. E.D. Mo. 2005); In re Harmon, 324 B.R. 383, 388 (Bankr. M.D. Fla. 2005); Araujo, 292 B.R. at 24; Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein), 272 B.R. 463, 480 (Bankr. N.D. Ill. 2001); D'Agnese v. Cotsibas (In re Cotsibas), 262 B.R. 182, 186 (Bankr. D.N.H. 2001); Solomon v. Barman (In re Barman), 237 B.R. 342, 349-50 (Bankr. E.D. Mich. 1999); Hays v. Cummins (In re Cummins), 166 B.R. 338, 358 (Bankr. W.D. Ark. 1994); Wilmington

Trust Co. v. Jarrell (In re Jarrell), 129 B.R. 29, 32-33 (Bankr. D. Del. 1991); 3 NORTON BANKRUPTCY LAW AND PRACTICE 2d, § 74:16. However, a minority of courts have found that "the use of the word 'refused' in § 727(a)(6) denotes that an action brought under this section should, in substance, simply be treated as a civil contempt proceeding, thereby implicitly negating the intent requirement from the word 'refused' as willfulness is not an element to a proceeding in civil contempt." Hunter v. Magack (In re Magack), 247 B.R. 406, 409-10 (Bankr. N.D. Ohio 1999); see United States v. Richardson (In re Richardson), 85 B.R. 1008, 1011 (Bankr. W.D. Mo. 1988).

After examining each of these approaches, the court joins the majority and holds that a trustee seeking a revocation of discharge must establish that the debtor willfully and intentionally refused to obey the court's order. Thus, the trustee must show more than a mere failure to obey the court's order that results from inadvertence, mistake, or inability to comply; he must demonstrate some degree of volition or willfulness on the part of the debtor. See Gillman v. Green (In re Green), 335 B.R. 181, 184 (Bankr. D. Utah 2005). Under this standard, the trustee may meet his burden by showing that the debtor received the order in question and failed to comply with its terms. See Missouri ex rel. Nixon v. Foster (In re Foster), 335 B.R. 709, 716 (Bankr. W.D. Mo. 2006); LeBarge v. Ireland (In re Ireland), 325 B.R. 836, 838 (Bankr. E.D. Mo. 2005); Katz v. Araujo (In re Araujo), 292 B.R. 19, 24 (Bankr.

D. Conn. 2005); Solomon v. Barman (In re Barman), 237 B.R. 342, 349-50 (Bankr. E.D. Mich. 1999) (holding that a debtor's refinancing of real property in the bankruptcy estate constituted a refusal to obey a court's order when the debtor had received notice of the order prohibiting such conduct, yet acted in direct violation of it). "Such a showing then imposes upon the debtor an obligation to explain [her] non-compliance." Foster, 335 B.R. at 716.

The appellant argues that the bankruptcy court's statement in its Memorandum Opinion and Order that "the debtor was not willfully uncooperative with the trustee" conclusively demonstrates that she did not refuse to follow the court's order and thus, requires a reversal in this matter. See Mem. Op. and Order at 7. However, appellant's argument is misplaced. The bankruptcy court made this particular statement in its consideration of In re Catron, 199 B.R. 11, 14 (Bankr. E.D. Va. 1996), which only discussed the intent requirement under the criminal contempt statute of 11 U.S.C. § 109(g)(1). In this case, the bankruptcy court never considered the intent required to constitute a refusal under 11 U.S.C. § 727(d)(3) and, as a result, legally erred to the extent that it concluded that "intent is a non-issue." See Mem. Op. and Order at 8. Nevertheless, this error does not provide the appellant with grounds for a reversal of the bankruptcy court's decision under the undisputed facts of record before this court.

In this case, the trustee demonstrated that the debtor had knowledge of the contents of the Administrative Order. Furthermore, the debtor never disputed that she received the Administrative Order. In addition, the trustee presented sufficient evidence, and the bankruptcy court correctly concluded, that the debtor "unequivocally" failed to obey the Administrative Order when she refinanced her real estate and eliminated any non-exempt equity that could have been used to satisfy unsecured creditors. See Mem. Op. and Order at 7. The fact that the debtor received the Administrative Order and simply ignored and acted contrary to its directives is sufficient, under the majority standard discussed above and adopted by this court, to constitute a refusal to obey the order. Accordingly, although this court applies a different legal standard than the bankruptcy court in determining what constitutes refusal under § 727(d)(3) and § 727(a)(6)(A), the court finds no error in the bankruptcy court's ultimate determination that Jordan refused to obey the Administrative Order and that this refusal warranted a revocation of discharge.

### III. Conclusion

For the reasons stated above, the court **AFFIRMS** the Memorandum Opinion and Order of the bankruptcy court revoking Jordan's discharge of indebtedness pursuant to 11 U.S.C. § 727(d)(3). The Clerk is **DIRECTED** to forward a copy of this Opinion to the parties

and to the United States Bankruptcy Court, Norfolk Division.

**IT IS SO ORDERED.**

                                                   /s/
                                      Rebecca Beach Smith

Norfolk, Virginia

September 26, 2006